Our next case is number 20-11929, Brian Boigris v. EWC P&T, LLC. Mr. Dempsey, are you ready? Yes, Your Honor. May it please the Court. My name is Patrick Dempsey and I represent Mr. Brian Boigris in this matter. This is an appeal from the District Court of a very limited, narrow issue that was a result of a summary judgment. My client is an individual who, in the course of a long dispute regarding the trademark dispute, that's how this action actually originally started. It was a fight about a decision by the Patent and Trademark Board to deny my client's notice of none of those trademarks are at issue before the Court and none of the proceedings that resulted from the Patent and Trademark Board, which was then appealed to the District Court, are presently before the Court. What is before the Court is that when my client brought this action in the District Court, the defendants in that action, EWC, proceeded to file a counterclaim against our clients, completely unrelated to the original trademark items, but related to their own trademark under the so-called Anti-Cybersquatting Consumer Protection Act. The Anti-Cybersquatting Consumer Protection Act was passed in 1999, back when the internet was relatively new. While the statute was being considered in Congress, Google was first formed and Google's domain was first registered. There were a few million domains at that point in time. Presently, their estimates vary, but there's at least total agreement that there's over a billion domain now that have been registered as of the present date. What occurred was is that my client registered the domain name EU Wax Center and Europa Wax Center. The defendants in this case who brought the counterclaim have a trademark for the trademark European Wax Center. In this proceeding, the elements that exist for a claim under the Anti-Cybersquatting Consumer Protection Act contains three elements. One claimant owns a valid trademark. The third element is the defendant has bad faith intent to profit from the plaintiff's trademark. Neither of those elements are presently pending on appeal. The only element that is presently pending on appeal is the second element, which is that the defendant registers, traffics in, or uses a domain name that is identical or confusingly similar to said trademark. In this particular case, the standard of review that is applied is obviously de novo at this point in time because it's an appeal of summary judgment. The issue that we have on appeal is under this confusingly similar standard. There's no allegation whatsoever that any domain names filed or registered by my client were identical to the trademark issue. Can I ask you just a quick question about the confusingly similar issue? I guess I don't think we have formally adopted it, but it seems to me that here the parties basically agree with other courts and commentators that there's this sight, sound, and meaning trilogy that governs the confusingly similar analysis. Is that your view? It's simply that that's what the standard is out there. The 11th Circuit has yet to adopt a standard on that, but we draw from what the other courts have applied. You would have us apply that, I think, is the essence of the question, right? Yes, to the extent that it satisfies, I believe, the concept of confusingly similar. That is to say it would be confusingly similar in sight, sound, and meaning. That's the test, I think, that Judge Newsom was talking about. You would have us adopt formally and expressly that standard, correct? I would say that the standard for confusingly similar, that is a metric that can be applied, but I believe that the way that it should actually be interpreted is that there should be at least some factual showing that it actually does, indeed, lead to consumer confusion. Let's talk about that. In this case, as I looked at Europa Wax Center domain, it used 15 of the 17 letters in the European Wax Center mark, and it looked to me like it did it in a pretty similar kind of way. They look, if not identical, quite similar when pronounced, and they don't really differ in meaning. If that's correct, where was the summary judgment error on the part of the district court? Well, that comes down actually to one of the cases that was decided in the Fourth Circuit with Scholastic v. Escolastic, and that was 10 Federal Appendix 152, Fourth Circuit 2004, and it's in our brief. What that case made the determination is that if you translate part of what would be a trademark into a different language, then simply by doing a translation does not violate the anti-cybersquatting Consumer Protection Act, and that was where Scholastic Inc., that makes obviously test prep and things like that, filed a suit against someone who had registered the name Escolastic, E-S-C-O-L-A-S-T-I-C-A. Then that, again, uses almost all of the same letters, and it kind of looks very similar, but it's a translation of word, and so Europa v. European. Now, again, their trademark is not Europe Wax Center, it's European Wax Center. Europa Wax Center is a common reference in Latin and in other European languages to the continent of Europe, and so the concept of European v. Europa is, in effect, a translation, and it does have a different meaning, because European is not a place, Europa is a place, and so European is a designation of a possessive quality. Again, I would have thought that instead of saying that Europa is a translation that effectively refers to Europe, you might have said Europa could mean any number of things. Europa is a Greek goddess, Europa is a satellite moon of Jupiter. It seems to me, I guess it's not my role to argue the case, but it seems like you might have stronger arguments than just that Europa is a translation of Europe. Well, thank you very much, Your Honor. What I was going to also reference was is that under the concept of meaning, I was going to get precisely to the issue of that it's a moon of Jupiter, it's a variety of things, whereas European has a very distinct, clear meaning, whereas Europa, again, Greek mythology, references to other topics, so that it does not fit in the meaning concept, but I just wanted to point out that to the extent that there is case law out there, it's not controlling from the Fourth Circuit, but the notion that similar sounding items that even might mean the same thing. It doesn't just say Europa, it says Europa wax center, and the EWC trademark says European wax center, so the stem doesn't stand alone, it's linked to wax center. Is that of any moment here? Well, whether it is similar in sight, sound, and meaning? Well, obviously, looking at the whole trademark is what we would be looking at, not just the stem, and I would agree with that. My point is, it's a different number of syllables from what the original one was, European wax center versus Europa wax center, and so it also does alter a few letters, and again, the important thing is the standard that we're asking for is simply that this is a factual issue that needs to be decided on a factual record, not just eyeballing it, and I believe that when you apply that standard, there was no evidence of actual confusion. They didn't have any expert testimony or any witnesses of the consuming public. I know surveys, there was no factual information presented in the record that would... Mr. Dempsey, what's your best case that says there has to be evidence of actual confusion? Uh, confusingly similar is a standard that is oftentimes applied in other forms of trademark, and that is often, as we noted in the brief, an issue of fact that needs to be determined on a record of facts. In this case... Is there any case that says that's part of the standard for confusingly similar, which is what is applicable to the statute here? Yes, there are multiple cases that are cited that talk about how this is an issue of fact, and that's in our brief. Sorry, that's a slightly different question. I was talking about your argument that there has to be evidence of actual confusion to show that something is... to show that a domain name is confusingly similar to a mark. Well, I would believe that there has to be at least some back and forth on record evidence of people actually being inclined to confuse it. Again, my time is about up, but I also wanted to point out that obviously we would take the position that EU wax center is fundamentally different and shouldn't even be... should have never been summary judgment entered in the fact that should have been graded in the opposite direction. But to conclude that thought, the primary idea here is that Europa means very different things and from European, they have a different number of syllables. And there was... and again, we're working from a time period now where when the Consumer Protection Act for cyber squatting was passed, there were only a few million domain names, and now there's over a billion. Let me ask you this, Mr. Dempsey. Let me ask you this question. It's an interesting question, which is closer and more similar and which may be more disparate. You say EU wax center is really different from European wax center. What meaning does one usually associate with the letters EU? Well, it could mean a variety of things, but specifically what we put out in our brief is that it would reflect the European Union, which is a political body. And when you're selling wax products or waxing services, you're not generally trying to attract customers. And what would be common would be European in both. And what would be disparate is the U for union. Well, it's again, it's not... the European Union is a totally different meaning from just represents a culture, a history, a tradition. And so they have very different... Or maybe a geographic area. And right now that it used to include Great Britain and now it does not, even though Great Britain is part of Europe. And so the idea would be is that it is a political body. And I think it has a very fundamentally different meaning. But most importantly, there is no question that EU wax center does not look anywhere close to the same. It doesn't sound the same. And so I think that when, if you were to apply the standard of like, could somebody hypothetically, if they really thought it through, come to some conclusion that there might be some overlap, that's not the same and confusingly similar. Most people, I mean, frankly, a lot of people in America that might be in the waxing, getting waxing services really don't have much of an idea of what the European Union actually is. And so I believe that it would be... And again, there's no evidence that a normal consumer would associate European Union as being the same as European. The European Union, again, it's a political body. It's not... As it's used by this trademark, it's designed to give off a sense that, oh, this is fancy. This is European. The EU does not give off a big fancy. Thank you, Mr. Dempsey. Because you are answering the court's questions, we will give you your full five minutes. Mr. Ruiz. Good morning, Your Honor. May it please the court. Oliver Ruiz of the law firm Malloy & Malloy on behalf of the appellee EWCP&T LLC. In April of 2016, the appellant Brian Boigris intentionally targeted EWC's intellectual property. He filed four fraudulent applications with the U.S. Patent and Trademark Office seeking to register EWC's trademarks, including the exact three names that were used for a specific product line. And he registered approximately 11 domain names that were identical or confusingly similar to EWC's European Wax Center trademarks or to EWC's own names, EuropaWaxCenter.com and EUWaxCenter.com, which are identical and the district court appropriately found they are identical or confusingly similar to the European Wax Center trademark. Can I ask you a quick question just sort of generally? The fact that the three of us or the four of us as we're having this conversation are sort of finding this so, you know, sort of like debatable and we're slicing the bologna pretty thin and trying to decide if this is close enough. I mean, does that at a relatively high level of generality suggest that this is like close enough that a backbinder should have been able to make the judgment for itself? If your honor's question, Judge Newsom, is that was it appropriate for the district court judge to have made this determination? Yeah, on summary judgment. Then absolutely yes. Both sides agree that the standard is confusingly similar as to sight, sound, and meaning. And I want to point out that the appellant below presented no evidence. So some of the, when your honor asked my friend on the other side about what are some other possible meanings that can be ascribed, none of that was presented and it's for the first time in this argument, wasn't even presented in the brief, wasn't presented in response to the motion for summary judgment below. And as noted in our briefs, courts routinely grant summary judgment on this issue of confusing similarity. And in fact, below the appellant, their statement of, or the response to the statement of facts was stricken because the entire sum of their argument was two sentences, no inferences, no other conclusions were even offered by the appellant in this case. They made a conclusory statement that it was inappropriate to grant summary judgment because there was no testimony, no expert opinions, no survey evidence, while other courts have not found that an obstacle at all. For example, Venetian gold that's in our brief or the Omega case that's in our brief, none of those courts found it an obstacle at all to determine the issue of confusing similarity. Do you agree that we can take some guidance from the Lanham Act cases about whether something gives rise to a likelihood of confusion? And I don't mean substantively, but we've said that at least that ordinarily is a question of fact and that we only decided it as a matter of law when it's like there's obvious clarity about it or something. Is that same deference to the fact-finding process applicable here? And if not, why not? No, it is not, Your Honor. And that's because circuit courts around the country and district courts as well have held that the inquiry under the ACPA is narrower than the traditional multi-factor likelihood of confusion test that's used for trademark infringement claims under Lanham Act. And in fact, the plain language of the ACPA says that the determination is made without regard to the goods or services of the parties. So I would direct the court to the circuit court decisions of the First Circuit and in Northern Light Technology Inc. versus Northern Lights Club, the Second Circuit decision in Sporty's Farm LLC versus Sportsman's Market, the Fourth Circuit decision in Newport News Holdings Corp. versus Virtual City Vision, the Fifth Circuit's decision in Southern Co. versus Dauben Inc. and the Eighth Circuit's decision in Coca-Cola versus Purdy, all of which stand for the proposition that the inquiry under the ACPA is narrower than the traditional multi-factor likelihood of confusion test for trademark infringement. And that's because, and both sides, by the way, Mr. Dempsey was asked whether both sides agree that the Cite, Sound, and Meaning trilogy is appropriate. Both sides agree that it is appropriate, and on page six of their brief, they take the position that an analysis of whether a domain name is confusingly similar to Mark is premised upon the pronunciation, appearance, and verbal translation citing Sporty's Farm. And so they are basically in agreement that the Cite, Sound, and Meaning trilogy is all that's needed. Now, this case- Why don't you take us, why don't you take us through then this question about whether, if we look at Cite, we look at Sound, and we look at Meaning. What about Cite, Sound, and Meaning as applied in this context yields the overwhelmingly likely conclusion of confusingly similar? Thank you. Tell me about Cite. Well, in Cite, Judge Marcus, as you pointed out earlier, with respect to europawaxcenter.com, he uses 15 of the 17 letters that are part of the incontestable European Wax Center trademark. So it's structured the same way. In terms of an appearance, it looks the same. And we would submit that EU Wax Center does as well, because as your honor noted, there's really only one meaning that can be ascribed to EU, and that's very well known to be European Union. And then when you get to the Sound, your honor, the Sound, there's no dispute here. And again, I want to reiterate that the appellant below did not offer any facts, no analysis as to Cite, Sound, or Meaning. With respect to Sound, Europa Wax Center and European Wax Center are very similar. I would note the Venetian Resort versus Venice Gold, Venetian Gold case that was cited in our brief. And that one we think is highly analogous, because on the one hand, the trademark was the Venetian Resort Hotel Casino. And there, the Eastern District of Virginia had no difficulty finding that Venice Gold Casino, for example, was confusingly similar to the registered trademark. And we believe that that's similar to European versus Europa in this case. And I think it bears mentioning... Yes, Judge Newsom. I want you to continue on Judge Marcus's three-part analysis. This may be the dumbest question ever. But are the courts settled on whether this Cite, Sound, or Meaning thing is a disjunctive, conjunctive, or just sort of gestalt kind of test? That's a good question, Judge Newsom. In some cases, we see Cite, Sound, and Meaning, but some cases we see Cite, Sound, or Meaning. And here, we believe... The reason it strikes me that it might matter is if you have the burden of showing similarity in Cite, Sound, and Meaning, it strikes me that with respect to Europa, you're pretty good on Cite, and Sound, but not so good on Meaning. And with respect to EU, you're pretty good on Meaning, or good-ish on Meaning, but not so good on Cite, and Sound. Well, we believe that any of these can lead to the determination that the accused domain names are confusingly similar to the European WAC Center trademark. Otherwise, the goal of the ACPA was to prohibit the unlawful actions of cyber squatters. And so, if they were able to make that kind of an argument, then that would just lead to... It would completely undermine the ACPA. So, I do want to point out also that the appellant below has no relationship, no connection whatsoever to a business that offers waxing services. So, there was absolutely no reason that Mr. Borges had to register EuropaWaxCenter.com or EUWaxCenter.com. His business deals with water restoration. He's an individual that's opened up different businesses. I believe he did marketing for one company. He was sued by the Florida Attorney General and entered a consent judgment for sending out misleading solicitations for state registration documents. And so, especially on this record... Counsel, all of that might go to the third prong looking at it in a general way, but we're talking only about prong two, whether there's confusing similarity in the sight, sound, and meaning. Would any of that be relevant to this question of sight, sound, and meaning? What you're talking about that appellant has no relation to a business that offers waxing or anything remotely resembling that, that might all be true. I have no doubt it is on this record, but my question is, so what? Well, we think it does, Your Honor, because it was the appellant's goal to replicate the EWC intellectual property. And as one circuit has noted, I believe it was the fourth circuit, that intentional infringers often have more brains than scruples. And when they intend to commit acts of intentional infringement, that they are usually successful. And so here you have an appellant that tried his best. In addition to the europawaxcenter.com and euwaxcenter.com domain names, this appellant registered about 10 other domain names that replicated European wax centers, domain found at waxcenter.com. For example, the registrations included waxcenter.club, waxcenter.miami, waxcenter.guru, waxcenter.company, waxcenter.solutions, waxcentercompany.com. So we think that the district court had an ample record. Yeah, let me come at it this way. An ACPA plaintiff must establish three things. One, that the trademark is distinctive or famous and entitled to protection. He doesn't dispute that. He agrees with you about that. Two, that the defendant registered a domain name that was identical or confusingly similar to the plaintiff's trademark. And three, that the defendant registered the domain in bad faith. He's not disputing that either. He is conceding for present purposes that the trademark was distinctive or famous and entitled to protection. He is conceding that the defendant registered the domain in bad faith. The only thing he challenges is whether the defendant registered the domain that was identical or confusingly similar. And I'm simply asking whether evidence that establishes the third requirement in any way bears upon, and if so, how, whether the domain was confusingly similar. Judge Marcus, we think it bears on the issue from the standpoint that the appellant did not, for example, in any way below make an argument or offer any facts or any contrary conclusions or inferences as to whether or not these domains are confusingly similar. But it's undisputed below that that's what he set out to do. And so while certainly the analysis here, and again, this is an analysis that is done on the spot by district courts around the country, in many cases that we've cited in our briefs, we think it is relevant, although it's not necessary for finding that a domain is confusingly similar. We think it is relevant that the court found- What you're really saying to me is it colorates the background here that they meant quite intentionally to rip off your mark. But I'm simply, and I don't say that isn't relevant, it's most assuredly relevant to the plaintiff being able to establish three things in order to make an ACPA case. I'm just focusing on whether it helps us answer confusing similarity questions. You're right. In this instance, I think the district court's decision is, or it's our position district court's decision is correct. It's in line with the decisions of the circuit courts that I've mentioned before and with the district court decisions that we cited in our cases. The hang up in terms of summary judgment is on whether the bad faith intent to profit factors create factual disputes here. They meant to rip you off and therefore the marks are confusingly similar. Again, we don't think that's required to affirm the district court's decision, but it's certainly something that the district court had it before in its record when determining this issue of confusing similarity. And these courts, for example, in Venice or the Venetian resort case, the mere existence of some alleged factual dispute doesn't defeat an otherwise properly supported motion for summary judgment. The requirement is that there is no genuine issue of material fact. The court below found that there was no genuine issue of material fact. In fact, the appellant brought forth no facts. Its response to statement of and I see that my time is up. I would just like to briefly conclude if I may presenting Judge prior. Yes, you may conclude. So whether this court of this court should affirm based on the fact that there was no evidence, no arguments, no reason, no contrary conclusions brought forth by the appellant below. But it can also affirm because the district court properly made the determination that the Europa Wax Center dot com and EU Wax Center dot com domains are confusingly similar in sight, sound or meaning to the European Wax Center, incontestable European Wax Center trademark. The appellant made a number of unsupported citations in its case, cited cases for unsupported propositions. The scholastic case is an unpublished decision, and it was like it was largely determined by the trademark infringement likelihood of confusion factor. So for the reasons we state in our brief, that case is distinguishable. And we ask that this court affirm the summary judgment ruling below and that it grant the appellees motion for damages and double costs in this frivolous appeal. Thank you, Your Honor. Thank you, Mr. Ruiz. Mr. Dempsey. Thank you. May it please the court. I want to address a few issues. First, this notion of the to the extent that the facts were stricken in relation to the statement of facts, that there were no facts presented by WC in support of confusingly similar other than to simply say they're confusingly similar, that they had no facts that our reply to that, our rejection of that was that this is an issue of fact, and there has to be facts in the record. They, the EWC bears the burden on summary judgment of providing the facts and and showing that there is no genuine issue of material fact and dispute, but they never actually have presented any facts. Now I would again, point out to the court that this is not settled law. There's different decisions from different circuit courts. There's no controlling opinion in the 11th circuit presently. And I would say that the issue of sight, sound, and meaning has to be an and, because if it's not an and, then the entire concept of applying confusingly similar can fall apart. For example, if you have something, again, in this scholastic case was a perfect example, is that if you have something that is looks and sounds the same, but is a totally different meaning, then it's not confusingly similar. Because, again, this statute, the anti-cybersquatting Consumer Protection Act, first of all, it's a consumer protection aspect to the case. It's actually trying to protect the public, not just other companies out there. Secondly, I would point out that it is subsection D of 15 U.S. Code 1125, which deals in general in sections A, B, and C with false designations of origin, false descriptions, and dilution as a general concept. It only gets to cybersquatting when it gets down to D. So I believe, and it is our contention, that although the sound, sight, and meaning test with an and is a useful guidance for determining confusingly similar, that it absolutely is the case that this court should actually look at what the statute says, which is confusingly similar. And because the anti-cybersquatting Consumer Protection Act falls within the general purview of trademark law as a general concept, it falls within a statute dealing with consumer confusion, dilution, that you actually have to apply a standard that the and confusingly similar appeals throughout trademark law. Now, I would again agree that it is under some other jurisdictions, they claim that it's a narrower test, but I think that it would make no sense for the court to ignore the actual statutory language, which is confusingly similar, and instead rely on a test that goes on as a metric to determine confusingly similar. So the test is useful for sight, sound, and meaning. It's a useful test, but at the end of the day, there has to be some evidence that it actually is confusingly similar. Then again, it's a consumer protection statute. If the population as a whole is, again, not many people follow politics, especially international politics, as much as attorneys and certainly your honorable judges, the EU is not going to immediately cause somebody to jump to mind to assume that European and EU are the same. So again, and the last thing that I would want to point out is that I think that the reason why the appellee keeps referring to the other elements of the test, the three elements for whether or not you violated the actual Anti-Cyberspotting Consumer Protection Act involves intent, the next one involves trafficking, and then finally we're on this element, the second element, which is the one that we're actually contesting, which is the confusingly similar. They're independent elements. If you simply could find that, oh, because someone, and again, we're not admitting that this was our client's attempt. We're just saying that we're not disputing the finding in the court for the purpose of appeal, but simply because if they could hypothetically satisfy the element of an intent to traffic in a website or a domain name, that doesn't mean that that makes it more likely that you can satisfy the other elements. They're independent. You would say in response to the same question I asked your colleague, that if you acted in bad faith, that would bear in no way upon whether there was a confusing similarity. Absolutely. Okay. And if I just might briefly conclude, I think my time's up, but I wanted to briefly conclude. Is that okay? You may. Yes. At the end of the day, this is a new issue for the 11th Circuit on what standard to apply. When the Consumer Protection Anti-Cyberspotting Act was passed back in 1999, there weren't that many domain names compared to what there are today. I believe that confusingly similar is a factual issue that you have to apply sight, sound, and meaning to the determination, because otherwise you're going to prevent and you're going to criminalize a large swath of domain names. And as a result, we believe that in this case, the issues of elements one and three have no sight, sound, and meaning and confusingly similar. And we believe that those were matters that should have been decided by a trier of fact, not on summary judgment, but after presentation of additional evidence on the issue of confusingly similar to determine whether or not it actually is confusingly similar to the consuming public, which this act was designed to protect. Thank you. Thank you, counsel. We understand your case. Thank you.